## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> and <br><br> COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL REGION WATER, <br><br> and <br><br> THE CITY OF HARRISBURG, PA, <br><br> Defendants. | Civil Action No. 1:15-cv-00291-WWC |

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO ENTER PARTIAL CONSENT DECREE AND JOINT STIPULATION REGARDING MODIFICATION TO PARTIAL CONSENT DECREE

Plaintiff United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), submits this Memorandum in Support

of its Unopposed Motion to Enter Partial Consent Decree and Joint Stipulation

Regarding Modification to Partial Consent Decree, respectfully requesting that this

1

Court sign and enter the proposed Partial Consent Decree filed with this Court on February 10, 2015 (Dkt. No. 4) and the Joint Stipulation Regarding Modification (Dkt. No. 7) filed simultaneously with the Motion to Enter.

On February 10, 2015, the United States lodged with this Court a proposed Partial Consent Decree between Plaintiffs United States and the Pennsylvania Department of Environmental Protection ("PADEP"), and Defendants Capital Region Water ("CRW") and the City of Harrisburg, PA ("City"). Dkt. No. 4. The proposed Partial Consent Decree requires CRW to perform initial injunctive relief to address violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.,* and Pennsylvania Clean Streams Law, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001, as alleged in Plaintiffs' Complaint.

All Parties support entry of the Partial Consent Decree and Joint Stipulation Regarding Modification. The proposed Partial Consent Decree was subject to a thirty-day public comment period, which ended on March 20, 2015. The United States received two public comments, both of which supported the terms of the decree. For the reasons set forth herein, the United States respectfully requests that the Court grant the Motion to Enter and sign both the Partial Consent Decree and Joint Stipulation on Modification.

# I. BACKGROUND

## A. Nature of the Case

The United States, on behalf of EPA, and co-plaintiff PADEP (collectively, "Plaintiffs"), filed this lawsuit against Capital Region Water and the City of Harrisburg, PA (collectively, "Defendants"), seeking civil penalties and injunctive relief to address violations of the Clean Water Act and Pennsylvania Clean Streams Law, in connection with Harrisburg's sewer system and municipal separate storm sewer system. The sewer system in Harrisburg, which includes a wastewater treatment plant and sewer lines with appurtenances, consists of both combined sewers (which carry both stormwater and wastewater) and separate sewers (which convey stormwater and wastewater in separate pipes). The alleged violations include numerous unpermitted overflows of sewage from the sewer system, and Defendants' failure to comply with various conditions established in the National Pollutant Discharge Elimination System ("NPDES") permits issued for the sewer and stormwater systems.

Between 2007 and 2013, CRW reported at least 59 unpermitted overflows from its combined sewer system. These overflows resulted in the discharge of approximately 8.3 million gallons of untreated combined sewage into the Susquehanna River and Paxton Creek. Plaintiffs identified the alleged NPDES permit violations, including Defendants' failures to properly operate and maintain

the sewer system and to develop and implement an adequate Long Term Control Plan, through inspections and further investigation, including information requests. Decree, at 3.

Historically, the ownership and permitting of the sewer system in Harrisburg was complicated, and split between the City and CRW. CRW owned the wastewater treatment plant and the sewer conveyance system, and was the holder of the NPDES permit for the treatment plant and combined sewer outfalls in Harrisburg. The City, however, owned the sewer collection system and the stormwater system, and was the permittee for the stormwater NPDES general permit under which Harrisburg had coverage. Despite this split-ownership and permitting arrangement, the City was the operator of the entire sewer system in Harrisburg, including the portions owned by and permitted to CRW.

During the negotiation of the Partial Consent Decree, the Parties discussed the past problems and future challenges associated with the split ownership and permitting arrangement. To ensure that an entity with the financial capability to perform the injunctive relief necessary to bring the sewer and stormwater systems into compliance with the Clean Water Act and Clean Streams Law would be in a position to do so, the City and CRW entered into a series of agreements whereby the City agreed to transfer its ownership and operation of the sewer and subsurface stormwater systems to CRW. The transfer was complete as of December 2013,

and ownership, operation, and permitting of the sewer and stormwater systems in Harrisburg are now consolidated with CRW, which will be undertaking the injunctive relief obligations in the Partial Consent Decree.

**B. Terms of the Proposed Partial Consent Decree**

The proposed Partial Consent Decree addresses numerous problems in Harrisburg's combined sewer and stormwater systems. The proposed Partial Consent Decree requires CRW to implement substantial injunctive relief that is designed to improve CRW's operation and maintenance of its sewer system and reduce unauthorized sewer overflows, in addition to requiring upgrades at the treatment plant to reduce biological nutrient discharge levels, capacity assessment in the separate sewer system, several early action projects, and development of a proper Long Term Control Plan for controlling combined sewer overflows into the future.

Specifically, to address violations related to improper operation and maintenance of the combined sewer system and stormwater system, the Partial Consent Decree requires CRW to develop, and submit for review and approval within six months of the Date of Lodging, a comprehensive plan that covers compliance with the Nine Minimum Controls (technology-based requirements of NPDES permits designed as short-term control measures) (Decree, ¶ 11), and submit an Individual Permit for the stormwater system that will include a

developed schedule and procedure for implementing all the Minimum Control Measures (best management practices which are requirements of NPDES stormwater permits) (*Id.*, ¶ 13). The Partial Consent Decree also requires CRW to complete construction of the biological nutrient removal project at its wastewater treatment facility by February 2016, which is designed to reduce biological nutrient discharge levels to the Susquehanna River, and consequently to the Chesapeake Bay. *Id.*, ¶ 32. Further, by April 2017, CRW must conduct a capacity assessment in the separate sanitary sewer portion of the system to support an improved understanding of any existing and potential capacity constraints that could lead to sanitary sewer overflows, and identify any necessary remedial work, and a schedule for completion of such remedial work, to address the identified capacity constraints. *Id.*, ¶ 30.

The Partial Consent Decree also requires CRW to conduct four early action projects: (1) high priority combined sewer interceptor improvements, (2) sinkhole repair, (3) Combined Sewer Overflow ("CSO") outfall repair, and (4) a CSO monitoring activation pilot study. Decree, ¶ 31. The first project, which is the subject of the Joint Stipulation on Modification and is addressed in further detail, below, requires CRW to conduct a comprehensive interceptor assessment and correct any serious defects by December 2020. *Id.*, ¶ 31(a). The second project requires CRW to identify, and remediate within three years of the Date of Lodging,

any sinkholes caused by structural deterioration of the sewer system. *Id.*, ¶ 31(b). The third early action project requires CRW to, within one year of the Date of Lodging, investigate the condition of CSO outfalls, including the condition and effectiveness of intrusion gates designed to keep the river from flowing into the sewer system and thus decreasing system capacity, and define a schedule for completing priority remedial work. *Id.*, ¶ 31(c). The fourth early action project requires CRW to develop and conduct a pilot study to undertake evaluation of several flow activation technologies to determine which long-term CSO activation monitoring equipment is suitable for CRW's system. *Id.*, ¶ 31(d). CRW timely submitted its plan for the CSO Activation Monitoring Pilot Study, and it is currently under review at EPA and PADEP.

Finally, a significant portion of the injunctive relief CRW is required to conduct pursuant to the Partial Consent Decree is the development of a Long Term Control Plan adequate to control combined sewer overflows into the future and achieve Clean Water Act compliance. Decree, ¶¶ 14-26. CRW is currently implementing an initial flow metering and monitoring plan, which is designed to collect the flow monitoring data that will be necessary to support hydraulic model development. CRW is required to submit a final Hydraulic Model Report by April 2016 (¶ 15(h)), and the Partial Consent Decree sets out detailed obligations that CRW must comply with in its development of a Long Term Control Plan,

including an analysis of impacts to environmental justice populations. *Id.*, ¶ 23. The fully-developed Long Term Control Plan is due to EPA and PADEP for review and approval by April 2018. *Id.*, ¶ 14.

### C. Joint Stipulation Regarding Modification

In conjunction with the Motion to Enter the Partial Consent Decree, the Parties submit for the Court's review and signature a Joint Stipulation Regarding Modification to the Partial Consent Decree. Dkt. No. 7. Pursuant to the terms of Paragraph 31(a) of the Partial Consent Decree as lodged, CRW undertook a comprehensive assessment of the structural integrity of the interceptors in the Harrisburg sewer system. Sewer interceptors are large pipes connected to smaller collection pipes, and are designed to convey sewage to the wastewater treatment plant. CRW's assessment work was ongoing throughout the Parties' negotiation of the Partial Consent Decree.

On February 26, 2015, CRW timely submitted the findings of the assessment and a proposed construction schedule for completing the priority remedial work identified as necessary in the interceptors. The engineering recommendations for prioritization of the remedial work ranked the structural problems identified in the Paxton Creek Interceptor and the Asylum Run Interceptor as a higher priority than the work necessary in the Front Street Interceptor. In the Partial Consent Decree currently lodged with the Court, CRW

is required to complete the remedial work in the Front Street Interceptor by July 1, 2019.  Based on the new information from the interceptor assessment, remedial work in the Paxton Creek and Asylum Run interceptors is higher priority and should be addressed before the work on the Front Street Interceptor.

As a result of this additional detailed information regarding the relative condition and structural integrity of the interceptors, the Parties agreed that a modification of the work schedule for the early action project on interceptor priority remedial work was appropriate, and negotiated the Joint Stipulation Regarding Modification to the Partial Consent Decree.  The proposed modification includes two changes to the Partial Consent Decree as lodged: 1) the deadline for completion of priority remedial work on the Front Street Interceptor is extended from July 1, 2019 to December 31, 2020, and 2) deadlines for the completion of priority remedial work on the Paxton Creek Interceptor and Asylum Run Interceptors are added, with work to be completed by December 31, 2017, and December 31, 2018, respectively.

**D. Resolution of Claims Alleged in Complaint**

Though the injunctive relief that will be obtained as a result of the Partial Consent Decree is substantial, it is not complete.  Entry of the Partial Consent Decree resolves all of Plaintiffs' claims against the City alleged in the Complaint, including Plaintiffs' claims for a civil penalty against the City, which are being

resolved without recovery because the City does not have the financial capability to pay such a penalty.  As to CRW, however, the Partial Consent Decree does not resolve all of Plaintiffs' claims for civil penalties or injunctive relief alleged in the Complaint.  Nevertheless, this partial settlement represents a significant step towards bringing CRW into compliance with the Clean Water Act and Clean Streams Law, as demonstrated by the scope of injunctive relief obtained, detailed in Section B, above.

The Partial Consent Decree explicitly recognizes that it is the intention of the Parties to negotiate either a modification to this Partial Consent Decree or a subsequent consent decree to fully resolve Plaintiffs' claims against CRW for the violations alleged in the Complaint.  Decree, ¶ 80.  The Parties anticipate negotiation of a final consent decree, which will fully resolve Plaintiffs' claims for civil penalties and injunctive relief, after CRW develops and submits to Plaintiffs for approval, the proposed Long Term Control Plan for the combined sewer system.  The final settlement will require CRW to implement the measures developed in the Long Term Control Plan, and will memorialize the implementation schedule and resolve any remaining related issues.  The Parties determined that this phased approach to the settlement of the claims alleged in the Complaint was preferable given the circumstances of the case and the nature of the

injunctive relief, specifically the development of a Long Term Control Plan, which will be undertaken pursuant to the Partial Consent Decree.

In the Partial Consent Decree, the Parties have agreed that the approved Long Term Control Plan shall be incorporated into and become an enforceable part of either a modification of this Partial Consent Decree, or a second consent decree. Decree, ¶ 26. Thus, for the unresolved claims there is no need for the Parties to be on a litigation track over the next three years while CRW is performing the Long Term Control Plan development work required by the Partial Consent Decree. Plaintiffs propose to submit a status report to the Court every six months following the entry of the Partial Consent Decree, regarding CRW's implementation of the work required by the Decree, and the Parties' negotiation of a final settlement agreement that will resolve all outstanding claims, when those negotiations begin. Or, following entry of the Partial Consent Decree, the Court could administratively stay the case pending future motion by the Parties regarding the final settlement of all claims alleged, as it prefers.

### E. Public Comments

The United States Department of Justice regulations provide an opportunity for the public to review and comment on environmental settlements. 28 C.F.R. § 50.7. In accordance with 28 C.F.R. § 50.7, and pursuant to Paragraph 105 of the Partial Consent Decree, the United States published notice in the Federal Register

on February 18, 2015.  80 Fed. Reg. 8687 (Feb. 18, 2015).  The notice described

the principal terms of the settlement and provided a thirty-day opportunity for

public comment, which ended on March 20, 2015.

The Partial Consent Decree received only two public comments, both of

which supported the terms of the settlement.  The first comment was submitted by

the Chair of the Sierra Club – PA Chapter and former Harrisburg resident, and the

second by the Conservation Chair of the Sierra Club, Governor Pinchot Group, on

behalf of the Group's approximately 2400 members.  *See* Dkt. Nos. 9-1, 9-2.  Both

comments contain substantially similar statements, supporting the schedule and

requirement for the nine minimum controls plan, and specifically noting the need

for addressing sinkholes in the community and evaluating the structural integrity

and maintenance needs of the sewer system, covered in Paragraphs 11(a)(iv) and

31(b) of the Decree.

Additionally, both commenters highlight the importance of the Partial

Consent Decree term requiring CRW to consider green infrastructure alternatives

as part of its Long Term Control Plan development process, and "support the

provision that Green Infrastructure must be considered," noting that it "may

ultimately result in better pollutant reductions, better habitat for wildlife as well as

a more livable city."  Further, both commenters "commend the decree's sensitivity

to the impact of any project on area residents," citing the requirement that CRW

include an analysis of the Long Term Control Plan's impact on environmental justice populations.  Dkt. Nos. 9-1, 9-2.

## II.    STANDARD OF REVIEW

In examining a proposed Consent Decree, the District Court "should be guided by the general principle that settlements are to be encouraged." *American Canoe Ass'n, Inc. v. U.S. E.P.A.*, 54 F. Supp. 2d 621, 625 (E.D. Va. 1999) (quoting *United States v. North Carolina*, 180 F.3d 574, 583 (4th Cir. 1999)). Voluntary settlement of civil controversies is in high judicial favor. *Pennwalt Corp. v. Plough, Inc*., 676 F.2d 77, 80 (3d Cir. 1982); *see also Autera v. Robinson*, 419 F.2d 1197, 1199 (D.C. Cir. 1969) (citing *St. Louis Min. & Mill. Co. v. Montana Min. Co.*, 171 U.S. 650, 656 (1898)). Courts favor settlements because "[w]hen the effort [to settle] is successful, the parties avoid the expense and delay incidental to litigation of the issues [and] the court is spared the burdens of a trial and the preparation and proceedings that must forerun it." *Pennwalt*, 676 F.2d at 80 (quoting *Autera*, 419 F.2d at 1199). This policy is particularly strong where the government has brought suit to obtain compliance with the law and determines that settlement of dispute by consent decree is in the public interest. *United States v. Atlas Minerals & Chems., Inc.*, 851 F. Supp. 639, 648 (E.D. Pa. 1994) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).

Deciding whether to approve or reject the entry of a Consent Decree is within the discretion of the Court. *Phoenix Res., Inc. v. Duncan Twp.*, 155 F.R.D. 507, 510 (M.D. Pa. 1994). However, the Court's examination of a proposed Consent Decree is deferential. This is particularly the case in the context of environmental litigation brought by the United States, where it has been acknowledged that a court owes "deference ... to [the] EPA's expertise and to the law's policy of encouraging settlement." *United States v. Se. Pennsylvania Transp. Auth.*, 235 F.3d 817, 822 (3d Cir. 2000); *see also In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (finding that where the appropriate agency has reviewed the record and has made a reasonable determination of fault and damages, that determination is owed deference); *Cannons,* 899 F.2d at 84 (finding that because the EPA is invested with special expertise about environmental torts, and uses that expertise in crafting judicious compromises, settlements approved by the EPA are especially favored).

Courts will review a proposed Consent Decree with deference when a government agency "charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility." *American Canoe*, 54 F. Supp. 2d at 625 (internal citation omitted), *U.S. E.P.A. v. City of Green Forest, Ark.*, 921 F. 2d 1394, 1402 (8th Cir. 1990)

(discretion given to EPA in enforcement of the Clean Water Act carries over to discretion in fashioning settlement). The policy favoring settlement is especially strong where a consent decree has been negotiated by the Department of Justice on behalf of the EPA. *United States v. Kramer*, 19 F. Supp. 2d 273, 281 (D.N.J. 1998) (quoting *United States v. Cannons Eng'g Corp.,* 720 F. Supp. 1027, 1035 (D. Mass. 1989), *aff'd,* 899 F.2d 79 (1st Cir. 1990)). In particular, courts will afford broad deference to EPA's expertise in determining an appropriate settlement and to the voluntary agreement of the parties in proposing the settlement. *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 118 (2d Cir. 1992), (*citing, Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 843–44 (1984)); *see also City Of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 94 (1st Cir. 2008) (requiring deference to "the series of judgments made by the United States and its expert and experienced staff at the EPA in reaching a settlement"). In reviewing consent decrees involving highly complex and scientific issues, courts properly defer to the determinations of the EPA Administrator and his staff because "[w]hen examining this kind of scientific determination ... a reviewing court must generally be at its most deferential." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1424 (6th Cir. 1991) (quoting *Balt. Gas & Elec. Co. v. NRDC,* 462 U.S. 87, 103 (1983)).

The Court's examination of the Consent Decree should avoid any "rubber stamp approval… [yet] it must stop short of the detailed and thorough investigation

that it would undertake if it were actually trying the case." *United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 680 (D.N.J. 1989) (internal citations omitted). "If a settlement were required to meet some judicially imposed platonic ideal, then, of course, the settlement would constitute not a compromise by the parties but judicial fiat." *Id*. at 685. In evaluating a proposed consent decree, courts must take a broad view of the proposed settlements, leaving highly technical issues and relatively petty inequities to the discourse between parties. *Cannons,* 899 F.2d at 86; *see also United States v. Cornell-Dubilier Elecs., Inc.*, No. 12-5407, 2014 WL 4978635, at 3 (D.N.J. Oct. 3, 2014). "Respect for the litigants, especially the United States, requires the court to play a much more constrained role" in evaluating settlements. *Rohm & Haas*, 721 F. Supp. at 685. Furthermore, the reviewing court may approve or reject the proposed consent decree, but the court does not have the authority to modify the proposed decree. *Cannons*, 720 F. Supp. at 1036.

In reviewing a proposed Consent Decree, the Court should refrain from substituting its own judgment for that of the parties. *United States v. BP Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1050 (N.D. Ind. 2001) (citing *Akzo,* 949 F.2d at 1434). The balancing of competing interests reflected in a proposed decree to which the United States is a party "must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.*, 648 F. 2d 660, 666 (9th Cir. 1981) *cert. denied*, 454 U.S. 1083 (1981). Courts have been

even more reluctant to second guess the judgment of the parties where the negotiators on behalf of the settlement process participants are "'a crew of sophisticated players, with sharply conflicting interests' representing 'so many affected parties, themselves knowledgeable.'" *Kramer*, 19 F. Supp. 2d at 281 (quoting *Cannons,* 899 F.2d at 84). As the First Circuit noted, "[t]he relevant standard, after all, is not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons*, 899 F.2d at 84, *citing Durrett v. Hou. Auth.*, 896 F.2d 600, 603-04 (1st Cir. 1990).

## III.   ARGUMENT

Plaintiffs submit that the proposed Partial Consent Decree is fair, reasonable, and in the public interest. *See Conservation Law Found. of New England, Inc. v. Franklin*, 989 F.2d 54, 58 (1st Cir. 1993).

### A.     The Partial Consent Decree is Fair

When analyzing the fairness of a settlement, courts examine the "candor, openness, and bargaining balance" of the negotiation process. *State of Colo. v. City & Cnty. of Denver*, No. 10- 1303, 2010 WL 4318835, at *4 (D. Colo. Oct. 22, 2010) (quoting *Cannons, 899 F.2d at 86*); *U.S. v. Union Elec. Co.*, 934 F. Supp. 324, 327 (E.D. Mo., 1996), *aff'd*, 132 F.3d 422 (8th Cir. 1997); *United States v. Telluride Co.*, 849 F. Supp. 1400,  1402 (D. Colo. 1994); *United States v. BP*

*Amoco*, 277 F.3d 1012, 1018 (8th Cir. 2002); *United States v. Findett Corp.*, 75 F. Supp. 2d 995, 1000 (E.D. Mo. 1999); *United States v. ASARCO* 814 F. Supp. 951, 954 (D.D.C. 1993). The court must determine if "the settlement was the result of good faith arms length negotiations." *United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir. 1992); *see also BP Amoco*, 277 F.3d at 1019-20 (affirming district court's finding that consent decree was procedurally fair because there was no evidence that the negotiations were not in good faith and at arm's length).

In this case, the Partial Consent Decree is fair because it was the result of a good faith arm's length negotiation process that took place over several years, with all Parties represented by experienced counsel and technical consultants. The efficacy of the process is memorialized not only in the Partial Consent Decree, but also the Joint Stipulation on Modification, which was negotiated in response to information submitted by CRW resulting from sewer condition assessment work required by the terms of the Partial Consent Decree.

### B.    The Partial Consent Decree is Reasonable

Courts assess the reasonableness of a consent decree by looking to its "likely efficaciousness as a vehicle for cleansing the environment." *Cannons*, 899 F.2d at 89. The "reasonableness" of a decree can be determined in light of litigation risks and whether it is technically adequate and compensates the public for the alleged

violations.  *See United States v. Bliss*, 133 F.R.D. 559, 568 (E.D.Mo.E. Div. 1990); *Cannons*, 899 F.2d at 90; *ASARCO* 814 F. Supp. at 954.

The proposed Partial Consent Decree is reasonable because it is designed to provide more immediate improvements to the environment in addition to setting CRW on a path to coming into full compliance with the Clean Water Act and Clean Streams Law.  The Partial Consent Decree requires CRW to make improvements to the sewer and stormwater systems and its operation and maintenance of those systems over the next several years, which will provide significant immediate benefits to both public health and the environment, while committing CRW to developing a Long Term Control Plan for controlling combined sewer overflows into the future.  This approach provides CRW with the flexibility to evaluate the sewer system and propose appropriate longer-term remedial measures, and a reasonable schedule for completing those measures, which will be subject to review and approval by Plaintiffs.  As described above, the Parties expect to negotiate a final settlement agreement that will require CRW to implement the approved Long Term Control Plan and resolve all remaining issues to address Plaintiffs' claims for civil penalties and injunctive relief alleged in the Complaint.

Additionally, while the United States does not believe significant litigation risk exists in this case, the proposed Partial Consent Decree is nevertheless both

reasonable and the most appropriate resolution of this case because it is the best mechanism to require CRW to implement the highly technical measures necessary to address the alleged violations.

### C. The Partial Consent Decree is Consistent with the Clean Water Act and in the Public Interest

The main goal of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The proposed Partial Consent Decree is consistent with that goal because it was designed with the objective of keeping sewage and contaminated stormwater out of the waters of the United States. As the public comments recognize, the proposed Partial Consent Decree addresses key problems in the Harrisburg sewer system, including improved operation and maintenance and development of a Long Term Control Plan that will meet the requirements of EPA's Combined Sewer Overflow Control Policy. The injunctive relief required pursuant to this partial settlement is designed to achieve both near-term health and environmental benefits for the community, while at the same time setting out the path for development of long-term relief.

Moreover, the entry of the proposed Partial Consent Decree and Joint Stipulation on Modification will avoid litigation costs, which furthers the public interest by preserving the limited resources of the United States in its efforts to

enforce the Clean Water Act and PADEP in its efforts to enforce the Clean Streams Law.

## IV.    CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court sign the Joint Stipulation Regarding Modification and enter the Partial Consent Decree by signing Page 80 of the Decree.  All Parties have executed the Joint Stipulation and Defendants have consented to entry of the Partial Consent Decree pursuant to Paragraph 105 of the decree.


Respectfully Submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice



Dated: May 22, 2015          */s/ Maya S. Abela*

MAYA S. ABELA
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044
Tel: 202-514-2717
maya.abela@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2015, I electronically filed the foregoing *Memorandum in Support of Unopposed Motion to Enter Consent Decree and Joint Stipulation Regarding Modification to Partial Consent Decree* with the Clerk of the Court using the CM/ECF system, and served a true and correct copy of the foregoing document by e-mail and U.S. mail to:

Steven A. Hann, Attorney for Defendant Capital Region Water
Hamburg, Rubin, Mullin, Maxwell & Lupin, PC
375 Morris Road, P.O. Box 1479
Lansdale, PA 19446-0773
Tel: 215-661-0400
Fax: 215-661-0315
shann@hrmml.com


Neil A. Grover, Attorney for Defendant City of Harrisburg, PA
City Solicitor, City of Harrisburg
Reverend Dr. Martin Luther King City Government Center
19 North Second Street, Suite 402
Harrisburg, PA 17101
Tel: 717-255-3065
Fax: 717-255-3056
ngrover@cityofhbg.com


*/s/ Maya S. Abela*

MAYA S. ABELA
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Tel: 202-514-2717
maya.abela@usdoj.gov