IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** and **COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION,** : : : : : | CIVIL ACTION NO. 1:15-CV-291  (Judge Conner) |
| **Plaintiffs** : : | |
| v. : : | |
| **CAPITAL REGION WATER and THE CITY OF HARRISBURG, PA,** : : : | |
| **Defendants** : | |

## MEMORANDUM

The Lower Susquehanna Riverkeeper Association ("LSRA") moves the court to intervene in the above-captioned action. The court will grant LSRA's motion to the extent set forth herein.

**I.    Factual Background & Procedural History**[1]

Plaintiffs in this case are the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Commonwealth of Pennsylvania Department of Environmental Protection ("PADEP"). Plaintiffs commenced this action on February 10, 2015, alleging that defendants Capital Region Water and the City of Harrisburg, Pennsylvania, are in violation of the federal Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and Pennsylvania's Clean Streams Law, 35 PA. STAT. AND CONS. STAT. ANN. § 691.1 *et seq.* Plaintiffs

---

[1] The factual background of this litigation, and the details of the alleged violations underlying it, are complex and nuanced. A general overview of that background will suffice for purposes of the instant motion.

aver that first the City of Harrisburg and then Capital Region Water—the municipal authority that now owns and manages the greater Harrisburg area's sewage and stormwater systems—discharged pollutants including raw sewage and stormwater runoff into the Susquehanna River and its perennial tributary Paxton Creek.  (See generally Doc. 1 ¶¶ 41-59).  These discharge events are referred to as "combined sewer overflows" or "CSOs."  (See id. ¶¶ 50-51, 54).

Plaintiffs filed a partial consent decree simultaneously with their complaint.  On May 22, 2015, following a notice-and-comment period, the United States filed an unopposed motion to enter the partial consent decree and a joint stipulation proposing a schedule adjustment for one of the decree's deliverables.  The late Judge William W. Caldwell approved the parties' stipulation on May 27, 2015, and entered the partial consent decree on August 24, 2015.

In general terms, the partial consent decree requires Capital Region Water to bring its systems into compliance with the Clean Water Act and Clean Streams Law by meeting certain deliverables.  (See Doc. 11 ¶¶ 11-31).  A centerpiece of the partial consent decree is its requirement that Capital Region Water develop an approvable long-term control plan to curb, and minimize the impact of, CSOs.  (See id. ¶¶ 14-26).  The partial consent decree set a deadline of April 1, 2018, for Capital Region Water to submit its long-term control plan to plaintiffs for review and approval.  (See id. ¶ 14).  The decree states that the only matters outstanding following its entry are (1) claims for injunctive relief related to Capital Region Water's failure to implement a compliant long-term control plan and (2) claims for civil penalties

against Capital Region Water under the Clean Water Act and Clean Streams Law. (See id. ¶ 80).

On February 2, 2018, Judge Caldwell instructed the parties to file a status report apprising the court of the status of the case. The case was reassigned to the undersigned three days later in light of Judge Caldwell's retirement. On February 16, 2018, the parties submitted a joint status report indicating that Capital Region Water was "generally in compliance" with the terms of the partial consent decree; noting the then-upcoming long-term control plan deadline of April 1, 2018; and advising that approval of the long-term control plan could "take a year or more." (See Doc. 18 at 1-2). The parties also advised that they anticipate negotiating a final consent decree for implementation of the long-term control plan and payment of a civil penalty. (See id. at 2). We convened a telephonic conference with the parties to discuss the joint status report and, on March 6, 2018, administratively closed the case—for statistical purposes only—while the parties proceeded under the partial consent decree. (See Doc. 25).

The docket remained inactive for more than three years after that status conference, until LSRA filed its instant motion to intervene. LSRA is a nonprofit organization whose mission is to "improv[e] and protect[] the ecological integrity of the Susquehanna Watershed and the Chesapeake Bay." (See Doc. 30-1 ¶ 15). Its members are local residents, fishermen, bird watchers, business owners, and others who use the lower Susquehanna River and its tributaries. (Id. ¶ 16). LSRA alleges the parties have failed to make adequate progress toward a long-term control plan (and other partial consent decree objectives) and, as a result, Capital Region Water

3

continues to discharge CSOs into the Susquehanna River. (See id. ¶¶ 66-74). After discovering the extent of the ongoing pollution in 2019, LSRA submitted public records requests to the PADEP and EPA, seeking information about the status of Capital Region Water's efforts under the partial consent decree. (See id. ¶¶ 79-82). LSRA's review of the agencies' responses, received in October and December 2020, respectively, led it to conclude Capital Region Water had failed to make sufficient progress toward abating its violations of the law. (See id. ¶¶ 81-92). Accordingly, LSRA filed the instant motion to intervene on May 6, 2021. The EPA, PADEP, Capital Region Water, and the City of Harrisburg (collectively, the "existing parties") oppose LSRA's motion.

**II.     Legal Standard**

Federal Rule of Civil Procedure 24 governs intervention in civil actions. See FED. R. CIV. P. 24. The rule establishes two types of intervention: intervention as of right, see FED. R. CIV. P. 24(a), and permissive intervention, see FED. R. CIV. P. 24(b). Intervention as of right is mandatory: the court "must permit" a party to intervene if they (1) have an unconditional federal statutory right to intervene or (2) claim an interest in the subject of the litigation that may be impaired or impeded by disposition of the action and will not be adequately represented by existing parties. See FED. R. CIV. P. 24(a). Permissive intervention, by contrast, is discretionary: a court "may permit" a party to intervene if they (1) are given a conditional federal statutory right to intervene or (2) have a claim or defense that shares a "common question of law or fact" with the existing lawsuit. See FED. R. CIV. P. 24(b)(1).

**III.    Discussion**

LSRA moves to intervene as of right in this lawsuit pursuant to Federal Rule of Civil Procedure 24(a)(1) and 33 U.S.C. § 1365(b)(1)(B).[2] Section 1365(b)(1)(B) permits "any citizen [to] intervene as a matter of right" in any lawsuit commenced by the EPA or a state to enforce effluent standards or limitations under the Clean Water Act. See 33 U.S.C. § 1365(b)(1)(B). The existing parties generally do not dispute that Section 1365(b)(1)(B) grants LSRA an unconditional statutory right to intervene in this case. (See Doc. 44 at 6; Doc. 45 at 5; Doc. 46 at 22). They dispute, however, whether LSRA's attempt to intervene is timely.[3]

A motion to intervene, whether as of right or by the court's permission, must be timely. See NAACP v. New York, 413 U.S. 345, 365 (1973); In re Fine Paper Antitrust Litig., 695 F.2d 494, 500 (3d Cir. 1982). Courts measure timeliness by examining the totality of the circumstances. See NAACP, 413 U.S. at 366; In re Fine Paper, 695 F.2d at 500 (quoting NAACP, 413 U.S. at 366). Our court of appeals has articulated three factors for determining whether a motion to intervene is timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." See Mountain Top Condo. Ass'n v. Dave Stabbert

---

[2] LSRA requests to intervene, in the alternative, under Rule 24(a)(2). Because we hold that LSRA may intervene under Rule 24(a)(1), we do not address intervention under Rule 24(a)(2).

[3] LSRA anticipates a potential standing challenge in its opening brief and offers argument in support of its standing to intervene. (See Doc. 30 at 8-11). None of the existing parties challenge LSRA's standing to intervene in this lawsuit, (see generally Docs. 44, 45, 46), and we conclude that LSRA has standing to intervene on behalf of its members, see Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); Pa. Prison Soc'y v. Cortes, 622 F.3d 215, 228 (3d Cir. 2010).

5

Master Builder, Inc., 72 F.3d 361, 324 (3d Cir. 1995) (citing In re Fine Paper, 695 F.2d at 500)). Whether a request to intervene is timely is left to the sound discretion of the district court. See NAACP, 413 U.S. at 366.

The existing parties emphasize the length of time since the court entered the partial consent decree (nearly six years at the time of LSRA's motion) as well as the mere existence of the partial consent decree in positing that it is simply too late for LSRA to intervene. Importantly, however, "mere passage of time" will not make a motion to intervene untimely. See Mountain Top, 72 F.3d at 369 (citing, *inter alia*, Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 844 F.2d 1050, 1056 (3d Cir. 1988)). The Supreme Court of the United States has cautioned that "the point to which the suit has progressed . . . is not solely dispositive." See NAACP, 413 U.S. at 365-66. Nor does mere existence of a partial consent decree foreclose LSRA's effort to intervene; our court of appeals has held that even when a *final* decree has been entered, intervention may still be appropriate in "extraordinary circumstances." See In re Fine Paper, 695 F.2d at 500 (quoting Del. Valley Citizens Council for Clean Air v. Pennsylvania, 674 F.2d 970, 974 (3d Cir. 1982)).

The entry of a partial consent decree is no doubt a significant procedural milestone in this litigation. But plaintiffs' claims, and the issues underlying them, are far from resolved. The partial consent decree left open at least two aspects of this litigation: requests for injunctive relief pertaining to Capital Region Water's failure to implement a long-term control plan—the central issue raised in LSRA's proposed complaint in intervention—and requests for civil penalties against Capital Region Water. (See Doc. 11 ¶ 80). As LSRA observes in its motion and proposed

6

complaint, a material aspect of the decree is its hallmark requirement that Capital Region Water develop an approvable long-term control plan to curb CSOs. And the existing parties' own representations about the status of their efforts reveal just how far they are from completing that objective: according to the EPA, Capital Region Water must now make repairs to its systems before it can even *develop* (much less submit, implement, and sustain compliance under) a long-term control plan. (See Doc. 44 at 5-6). The existing parties are currently negotiating a modification of the partial consent decree to account for this new hurdle. (See id.) Thus, we are at least two substantial steps—a modified consent decree, and a final consent decree—from concluding this litigation. Cf. United States v. Oregon, 745 F.2d 550, 552 (9th Cir. 1984) (holding state could intervene six years after long-term settlement plan was reached because "possibility of new and expanded negotiations" constituted "new stage" of litigation (collecting cases)); Hodgson v. United Mine Workers of Am., 473 F.2d 118, 129 (D.C. Cir. 1972) (observing that "[t]imeliness presents no automatic barrier to intervention in post-judgment proceedings where substantial problems in formulating relief remain to be resolved."). Under the circumstances of this case, the first factor favors permitting intervention.

The first factor is closely related to the third: the new stage of the existing parties' negotiations, and the circumstances necessitating it, are the reason LSRA did not seek leave to intervene until now. See Oregon, 745 F.2d at 552 (considering expanded negotiations among existing parties to be changed circumstance relevant to both first and third factors). As a general rule, a proposed intervenor's delay is measured from the point at which they knew or should have known "that their

interests were in jeopardy." See Mountain Top Condo. Ass'n, 72 F.3d at 370. LSRA argues persuasively it could not have anticipated the existing parties' lack of progress until it submitted public records requests and learned, in late 2020, of delays in developing the long-term control plan and the corresponding failure to reduce CSOs. (See Doc. 52 at 14-15). In other words, LSRA relied on the partial consent decree, and the existing parties' assurances and obligations thereunder, and promptly sought to intervene once it believed the existing parties were no longer protecting its rights. See Mountain Top Condo. Ass'n, 72 F.3d at 370; see also United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1182-83 (3d Cir. 1994).

Capital Region Water counters that the case is proceeding along exactly as expected by the parties and the court at the time the partial consent decree was entered—in its view, belying any claim that changed circumstances justify LSRA's delay. (See Doc. 45 at 10). We respectfully disagree. The partial consent decree contemplates an approvable long-term control plan having been submitted by April 1, 2018. (See Doc. 11 ¶ 14). The EPA estimated in advance of a March 2018 status conference with the court that its approval of this plan could "take a year or more." (See Doc. 18 at 2). Approaching four years later, Capital Region Water has been unable to meet this deliverable, and the existing parties now inform the court that Capital Region Water will be unable do so until *after* it conducts necessary repair work. (See Doc. 44 at 5-6). Such substantial delays were not contemplated by the court. We surmise the parties did not expect such roadblocks either; if the parties had, surely the partial consent decree would have addressed them. All the while, according to LSRA, defendants have continued to discharge pollutants into the

8

Susquehanna River and Paxton Creek.  (See Doc. 52 at 8-9; see also Doc. 30-1 ¶¶ 66-74).  We conclude that LSRA's delay in seeking leave to intervene, and its decision to seek such leave now, are well justified.

Finally, we consider prejudice to the existing parties.  We find that the existing parties will suffer little, if any, prejudice from LSRA's intervention.  The existing parties' primary concern is grounded in a misapprehension that LSRA will seek to undo all that has been accomplished to date.  (See Doc. 44 at 10-15 (claiming prejudice due to "LSRA's . . . obvious interest in unwinding the Decree"); Doc. 45 at 11-15 (claiming LSRA "seeks to modify the substantive terms of" the partial consent decree"); Doc. 46 at 15-16 (claiming LSRA "now seeks to . . . relitigat[e] the 2015 Partial Consent Decree")).  Were that the case, we would likely resolve this motion differently.  See, e.g., Del. Valley Citizens' Council, 674 F.2d at 975 (denying motion to intervene when movants sought "to vacate the consent decree").  LSRA makes clear in its briefing, however, that it seeks to participate on a prospective basis only, to ensure a proper long-term control plan is developed and implemented once and for all.[4]  (See Doc. 52 at 12 ("Contrary to the parties' assertions, LSRA is *not* seeking to void or otherwise undo the existing provisions in the current [partial consent decree]."); see also id. at 14 (describing intent to "participate in negotiations going

---

[4] Although LSRA asserts in its briefing that it seeks to intervene only on a forward-looking basis, aspects of its proposed complaint in intervention seem to request retroactive relief: for example, the proposed complaint could be read to seek declaratory judgment invalidating the partial consent decree when it requests a "declaration that the [partial consent decree] fails to require compliance with the Clean Water Act, Clean Streams Law, or [National Pollutant Discharge Elimination System] Permit."  (See Doc. 30-1 at 32).  We emphasize that LSRA may intervene on a forward-looking basis *only*, consistent with representations in its briefing.

forward")). The existing parties have not identified any prejudice should LSRA's intervention be forward-looking only. Accordingly, we find that the existing parties will not be prejudiced by LSRA's participation as an intervenor for those aspects of this litigation that remain.

## IV.     Conclusion

For the reasons explained herein, we will grant LSRA's motion and permit LSRA to intervene as of right as to the remaining aspects of this litigation, namely, development of (1) any modifications to the partial consent decree, (2) the long-term control plan, and (3) the final consent decree.[5]  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     December 17, 2021

---

[5] The EPA raises a question in its opposition brief about whether LSRA could sign on to a modification of the partial consent decree given that it is not a signatory party thereto. (See Doc. 44 at 13; see also Doc. 11 ¶ 99 (providing that partial consent decree "may be modified only by a subsequent written agreement signed by all Parties"); id. ¶ 8(ll) (defining "Parties" to include the United States, PADEP, the City of Harrisburg, and Capital Region Water)). The EPA and Capital Region Water also posit that LSRA's nonsignatory status would preclude it from moving to enforce the partial consent decree. (See Doc. 44 at 14; Doc. 45 at 4-7; see also Doc. 11 ¶ 84 ("This Consent Decree does not create rights in, or grant any cause of action to, any third party not party to this Consent Decree.")). We encourage the existing parties to work together with LSRA to resolve any such disputes. Failing amicable resolution, the parties may raise these issues through appropriate motion practice.